Louis Stix & Co., plaintiffs in error, *vs.* S. Pump & Co., defendants in error.

1. This Court will not control the discretion of the Court below in refusing to continue a case, when the party applying therefor fails to state *any material fact* which he expects to prove by the witness whose evidence he seeks to obtain, applicable to the issue on trial before the Court.

2. When the Court charged the jury upon the trial of an issue as to the truth of the plaintiff's affidavit in sueing out an attachment, "that if they believed from the testimony, that the defendants were not about to remove beyond the limits of the county on the 14th day of December, 1866, the day on which said attachment was sued out, then they must find the issue in favor of the defendants."    *Held*, that although the charge of the Court was too *stringent* in confining the inquiry of the jury to the *precise day* on which the attachment was sued out, yet, the verdict being right under the evidence contained in the record, a new trial will not be granted for that error in the charge of the Court.

Stix & Co., *vs.* Pump & Co.

Traverse of attachment affidavit.    Tried before Judge WORRILL.    Muscogee Superior Court.    May Term, 1867.

On the 14th of December, 1866, Louis Stix & Co., in said county, sued out attachment against Simon Pump, David Marks, Isaac Marks and Jacob Marks, partners under ·the firm name of S. Pump & Co., on the ground that said defendants were indebted to them $5,027.96, and that they were about to remove beyond the limits of said county.  The attachment was levied on certain goods, and at the return-term, the defendants, by their attorneys, traversed said ground. Upon this issue was joined.    When this issue came on for trial, on the appeal, plaintiff's attorneys moved for a continuance upon the ground that " plaintiffs reside in Cincinnati, Ohio ; about September or October last, plaintiffs sold to defendants bills of goods amounting to something like $14,000 or $15,000, some on thirty days' and some on four months' credit—defendants were selling goods at Memphis, Tennessee, and Columbus, Georgia ; that the firm of S. Pump & Co. consisted of S. Pump, David, Isaac and Jacob Marks ; Isaac and Jacob attended to the business in Columbus, and S. Pump and David Marks resided at Memphis and attended to the business there ; that said David was the father of said Isaac and Jacob ; that said David and Pump were the leading and controlling members of the firm ; Isaac and Jacob were young men and came to Columbus some time in 186— ; that the defendants formerly resided in Cincinnati : that plaintiffs, early in December last, heard a rumor that S. Pump & Co. had sold out their goods ; one of the plaintiffs, Swartz, started immediately to Memphis to look after their claim ; could not get an interview with the Memphis partners ; came immediately to Columbus and saw said Isaac and Jacob.  He pressed them for some settlement of his claim, they said their father and Pump had sold out the entire stock of goods to one Wolf, but they knew nothing of the terms of the sale, the proceeds of the sale had all been sent to their father in Memphis, and referred Swartz to him for information ; they said their father and Pump managed the whole business, and they

regretted their condition; that as soon as they could get over their embarrassments, they had no doubt but the entire claim would be settled, and further that they were then out of business and would leave Columbus as soon as they could get employment elsewhere. Swartz returned to Memphis, had an interview with David Marks, was told by him that they had sold out the stock of goods, but gave him little satisfaction as to the terms of the sale, the amount received, or what had become of the money. That on the 14th of December, 1866, he sued out said attachment returnable to March Term of the County-Court. Sometime before that Court defendant's counsel took out interrogatories for David Marks, M. Wolf and S. Pump, which were fully crossed by plaintiff's attorneys for the purpose of proving a full discovery from said parties as to the entire transaction, as well as to the relationship, ages and residence of all the members of the firm, that counsel for defendants informed counsel for plaintiffs that said interrogatories had been forwarded to Memphis for execution, and afterwards, and about the time of the session of the County-Court, defendants' counsel informed them that they had information from Memphis that said interrogatories had been executed and mailed, and were on their way here.

That they, relying on the facts as to said interrogatories having been mailed, were satisfied that the answers to them would contain all the discovery which they could get from said defendants, and therefore they did not sue out interrogatories for themselves for defendants; four or five days before the time of the Court then in session, defendants' counsel told them that the interrogatories had not come to Columbus, but were probably lost in the Western rivers in March last. They then at once took out interrogatories for said witnesses, which were crossed by defendants' attorneys on the first day of this term, and on that day they were forwarded to Memphis for execution, and they had not been returned. The application was not for delay, but for a full discovery from defendants and M. Wolf:

When asked what they expected to prove by the witnesses, they stated that they could not state exactly what particular

facts they would expect to prove by them, because Swartz had said that in his interview with the parties, they declined to give him any satisfactory information about the transaction. It farther appeared that the interrogatories first mentioned were taken out in the case of M. Wolf, and not in this case. Defendants' attorneys offered to consent to a continuance if plaintiffs' attorneys would state that they expected to prove by either of said witnesses any fact showing that defendants were about to remove. Plaintiffs' attorneys replied that they would only say they hoped to prove something. The Court refused the continuance.

The trial proceeded, and the following testimony was adduced.

Said SWARTZ testified : that said Isaac and Jacob told him they had nothing to do at Columbus, knew not where to go or how to make a living, that one of M. Wolf's men was keeping the store at Columbus, that they would move away as soon as they could find a place to work in, but they did not say when they would leave Columbus or where they would go, they said they did not know. They said they knew not how much was gotten for the stock. All this was on the 14th December, 1866.

JACOB MARKS testified : that he did not tell Swartz he intended to leave Columbus, &c., as above : that he did not intend to move out of said county, but in fact had, on the 11th of December, 1866, made arrangements with Ullman, agent of Wolf, to remain permanently at Columbus and clerk for Wolf. He swore that he did not tell Grigsby E. Thomas, Jr., that he and his brother Isaac were not going to leave Columbus till the week after the 14th of December aforesaid.

ISAAC MARKS testified substantially and almost literally the same as Jacob had testified to. He said he never heard said agent of Wolf say to said Thomas, that he and his brother Jacob would not leave Columbus until the week after said 14th of December.

ULLMAN testified : that he came to Columbus about the last of November, 1866, as agent of Wolf, who had bought out

the store of S. Pump & Co., in Columbus ; as such agent, he employed Isaac and Jacob, on the 11th of December, 1866, to clerk in Columbus for Wolf. Said Thomas came into the store about the 14th of December, 1866, asked for Jacob and Isaac ; he told Thomas they were not in, but did not, to his knowledge, say they would not leave Columbus until the week after the 14th of December, 1866.

Said THOMAS, in rebuttal, testified : that he had a claim against S. Pump & Co., went into what he thought was their store, saw Ullman, asked for Isaac and Jacob, Ullman said nothing but pointed to the sign, " M. Wolf, Successor to S. Pump & Co." He said to Ullman that he heard Isaac and Jacob were going away ; Ullman replied that they were not going " this week," would not go " until next week." No one else was present but himself and Ullman, it was on the 14th of December, 1866.

SWARTZ was reintroduced, testified more particularly but substantially to nothing additional to his testimony aforesaid.

The Court charged the jury as appears by the motion for new trial.

The verdict was for S. Pump & Co.

Plaintiffs' attorneys moved for a new trial on the grounds that the Court erred in overruling said motion for a continuance, in charging the jury that if, from the testimony, " they believed defendants were about to remove from the County of Muscogee on the 14th day of December, 1866, the day on which said attachment was sued out, then they must find the issue in favor of the plaintiff; but on the other hand, if the jury believed from the evidence, that the defendants were not about to remove beyond the limits of said county on the 14th of December, 1866, the day on which said attachment was sued out, then they must find the issue in favor of the defendants."

The Court overruled the motion, and this is brought up for review.

INGRAHAM, CRAWFORD & POU, for plaintiffs in error.

MOSES & GARRARD, for defendants in error.

Stix & Co., *vs.* Pump & Co.

WARNER, C. J.

The error assigned to the judgment of the Court below in this case, is in refusing the motion for a new trial on the grounds specified therein. We will not control the discretion of the Court below in refusing to continue the case, upon the statement of facts exhibited by the record. The failure of the plaintiffs' attorneys to state that they expected to prove by either of the witnesses any facts showing that the defendants were *about to remove,* was sufficient to sustain the judgment of the Court upon this point. The question in issue then before the Court to be tried, was whether the defendants were *about to remove.*

The Court charged the jury, " that if they believed from the testimony, that the defendants were not about to remove beyond the limits of the county on the 14th day of December, 1866, *the day on which said attachment was sued out,* then they must find the issue in favor of the defendants." We think the charge of the Court was rather too *stringent* in confining the inquiry of the jury to the *precise day* on which the attachment was sued out ; for the party may, by his acts and conduct, show his *intention* to remove the day before sueing out the attachment, or *about that time.* Did the evidence show that the defendants were about to remove from the county on that day or about that time, so as to authorize the plaintiffs to take out an attachment on that day? Whether the plaintiffs are authorized under the statute to sue out an attachment on the ground stated, depends upon the acts and conduct of the defendants, showing their *intention* at or about the time the attachment is taken out. The verdict in this case being right under the evidence contained in the record, we will not reverse the judgment in refusing to grant a new trial.

Let the judgment of the Court below be affirmed.